United States District Court
Southern District of Texas
**ENTERED**
March 02, 2016
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

IVAN XAVIER ESPARZA,            §
(TDCJ-CID #1396630)             §
                               §
           Petitioner,          §
                               §
VS.                            §      CIVIL ACTION NO. H-14-1038
                               §
WILLIAM STEPHENS,              §
                               §
           Respondent.          §

## MEMORANDUM AND OPINION

A Texas state court jury convicted the petitioner, Ivan Xavier Esparza, in 2006 of an aggravated robbery committed in 2004. He is serving a 55-year sentence. Esparza seeks relief under 28 U.S.C. § 2254, asserting ineffective assistance of trial and appellate counsel and insufficient evidence to support his conviction. The respondent moved for summary judgment, (Docket Entry No. 16), and filed a copy of the state-court records. Esparza responded, (Docket Entry No. 17).

Based on the pleadings, the motions and briefs, the record, and the applicable law, the court grants the respondent's motion, denies Esparza's petition, and enters final judgment dismissing the case by separate order. The reasons for these rulings are set out below.

## I.      Procedural Background

After a jury found Esparza guilty of the felony offense of aggravated robbery, on September 20, 2006, the court sentenced him to a 55-year prison term. (Cause No. 1021509). The First Court of Appeals of Texas affirmed Esparza's conviction on November 8, 2007. *Esparza v. State*, 01-06-00866-CR (Tex. App.—Houston [1st Dist.] 2007, pet. dism'd, not designated for publication). The Texas Court of Criminal Appeals granted Esparza an extension until February 8,

P:\CASES\prisoner-habeas\2014\14-1038.d04.wpd

2008 to file his petition for discretionary review.  On March 19, 2008, that court dismissed Esparza's petition as untimely filed.  Esparza filed an application for state habeas corpus relief on March 13, 2009, which the Texas Court of Criminal Appeals denied without written order on March 12, 2014. (Docket Entry No. 10-26, p. 1).

In this federal habeas petition, Esparza asserts the following claims:

> (1)  the evidence was insufficient to support his conviction;
>
> (2)  trial counsel, Denise Crawford, rendered ineffective assistance by failing to investigate witness Glenn Summers and failing to request a jury instruction under Texas Code of Criminal Procedure article 38.23; and
>
> (3)  appellate counsel, Patrick F. McCann, rendered ineffective assistance by abandoning Esparza during the petition for discretionary review and failing to raise Esparza's motion to suppress for appellate review.

Each claim and the response is examined in light of the state-court record and the governing law.

## II.    Factual Background

The state appellate court summarized the evidence at trial, as follows:

> On the evening of November 6, 2004, complainant, Jesse Zorbas, and his eight-year-old brother, Max, were returning home. As Jesse turned into their driveway, he saw a white van pull into the driveway behind him. At the time, Jesse thought someone in the van was dropping off his little sister, so he got out of his car and began walking toward the van. When Jesse saw appellant get out of the van, he became suspicious and began to return to his car. Before Jesse could get back into his car, appellant ran toward Jesse and the two men began to struggle. Jesse testified that there was some natural light remaining, as well as two motion sensor lights and a street light, illuminating the area. As a result, he was able to get a good look at appellant before

the struggle. At trial, Jesse testified that he was "absolutely positive" that appellant was the man with whom he had struggled.

As the struggle began, Jesse yelled for his little brother to run to the house. Though the struggle between appellant and Jesse only lasted approximately six to seven seconds, Jesse testified that he clearly saw appellant's face. During the struggle, as a second person from the van approached, appellant stabbed Jesse in the neck and the arm with a knife. Jesse then started to run away, but was stabbed in the back. Jesse did not see who stabbed him in the back, but he was "fairly sure" it was appellant. Jesse also saw appellant get into the driver seat of Jesse's car. Appellant then told him, "Don't try anything. I have a gun," and then backed out of the driveway in Jesse's car.

Several hours after the robbery, appellant was apprehended driving the stolen vehicle. A knife was later recovered from the stolen vehicle, but no fingerprints were recovered from the knife or the vehicle.

Within twelve hours of the robbery, police officers came to the hospital to show Jesse a video lineup, which included appellant.[FN1] Before the police arrived, Jesse had an allergic reaction to iodine, and the medicine he was given to treat the reaction had made him drowsy. The police admonished Jesse on the procedure of identifying a suspect and then showed him the video lineup. At trial, he testified that, because he was drowsy and could not see the television well, at that time he was only 90 percent sure that appellant was the person who had committed the robbery. Jesse testified that he was being extra cautious when he tentatively identified appellant, and that he believed that he would later be able to see the lineup in person.

> FN1. Appellant does not challenge the propriety of the videotaped lineup, and we discuss it only because appellant relies on it in his sufficiency challenges.

In March 2005, Jesse went to a police station to view a live lineup, and this time he positively identified appellant as the person who committed the robbery. Jesse's brother Max, however, was unable to identify appellant and told the officer who conducted the lineup that he did not get a good look at the men's faces. The officer testified that appellant was the only person to appear in both the video and live lineups.

*Esparza v. State*, 01-06-00866-CR 2007 WL 3293716, at *1 (Tex. App.—Houston [1st Dist.] 2007, *pet. dism'd*)(not designated for publication).

**III.    The Procedurally Barred Claim**

Procedural default and exhaustion limit federal habeas review. *Bledsue v. Johnson,* 188 F.3d 250, 254 (5th Cir. 1999).   A state prisoner seeking federal habeas relief must ordinarily first "exhaus[t] the remedies available in the courts of the State," 28 U.S.C. § 2254(b)(1)(A), giving those courts "the first opportunity to address and correct alleged violations of [the] prisoner's federal rights." *Coleman v. Thompson,* 501 U.S. 722, 731 (1991).   Exhaustion requires that the prisoner "have fairly presented the substance of his claim to the state courts." *Nobles v. Johnson,* 127 F.3d 409, 420 (5th Cir. 1997); *O'Sullivan v. Boerckel*, 526 U.S. 838, 846 (1999).   "Determining whether a petitioner exhausted his claim in state court is a case- and   fact-specific inquiry." *Moore v. Quarterman,* 533 F.3d 338, 341 (5th Cir. 2008) (en banc).

In Texas, a criminal defendant may challenge a conviction by filing a direct appeal followed, if necessary, by a petition for discretionary review in the Texas Court of Criminal Appeals, or by filing a petition for writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure in the convicting court, which is transmitted to the Texas Court of Criminal Appeals once the trial court determines whether findings are necessary. *See* TEX. CODE CRIM. PROC. art. 11.07, § 3(c); *see also Busby v. Dretke,* 359 F.3d 708, 723 (5th Cir. 2004) ("Habeas petitioners must exhaust state remedies by pursuing their claims through one complete cycle of either state direct appeal or post-conviction collateral proceedings.").

In addition, a federal court generally cannot review the merits of a state prisoner's habeas petition if the claims in the petition are procedurally defaulted. *See, e.g., Magwood v. Patterson,* 561

U.S. 320, 340 (2010) ("If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention - whether in trial, appellate, or habeas proceedings, as state law may require - procedural default will bar federal review."). "Procedural default . . . occurs when a prisoner fails to exhaust available state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Williams v. Thaler*, 602 F.3d 291, 305 (5th Cir. 2010). When state remedies are unavailable because of the petitioner's own procedural default, or when "it is obvious that the unexhausted claim would be procedurally barred in state court, we will forego the needless 'judicial ping-pong' and hold the claim procedurally barred from habeas review." *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995) (quoting *Steel v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993); *see also Coleman v. Thompson*, 501 U.S. 722, 736 n.1 (1991)) ("[I]f the petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, . . . [then] there is a procedural default for purposes of federal habeas . . . .").

Esparza alleges that his appellate counsel abandoned him when it was time to file a petition for discretionary review. The respondent contends that Esparza's claim is procedurally barred because he did not present it in his state habeas application.

To overcome his procedural default of this claim, Esparza must either "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Esparza has not made either showing. These claims are procedurally barred and are dismissed.

## IV.    The AEDPA Standard of Review

Under 28 U.S.C. § 2254(d), a federal court may grant a habeas writ for a defendant convicted under a state judgment only if the state-courts adjudication of the defendant's constitutional claim (1) "'was contrary to' federal law then clearly established in the holdings of" the Supreme Court, (2) "'involved an unreasonable application of'" clearly established Supreme Court precedent, or (3) "'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100–101 (2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)); 28 U.S.C. § 2254(d).  The AEDPA "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in [28 U.S.C.] §§ 2254(d)(1) and (d)(2)." *Id.*, 131 S. Ct. at 784 (2011).  Under those provisions, "a federal court cannot grant a petition for a writ of habeas corpus unless the state court's adjudication of the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law.'" *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (quoting 28 U.S.C. § 2254(d)(1)); *see also Thaler v. Haynes*, 559 U.S. 43, 47 (2010); *Bell v. Cone*, 535 U.S. 685, 698 (2002); *Early v. Packer*, 537 U.S. 3, 7-8 (2002); *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

"The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Morrow v. Dretke*, 367 F.3d 309, 313 (5th Cir. 2004); *Foster v. Johnson*, 293 F.3d 766, 776 (5th Cir. 2002).  Similarly, federal courts defer to a state court's factual determinations, presuming all factual findings to be correct. *See* 28 U.S.C. § 2254(e)(1),(2).  "The presumption of correctness not only applies to explicit findings

of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

Esparza is proceeding *pro se.* A *pro se* habeas petition is construed liberally and not held to the same stringent and rigorous standards as pleadings filed by lawyers. *See Martin v. Maxey,* 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti,* 648 F.2d 268, 271 (5th Cir. Unit A June 1981). This court broadly interprets Esparza's state and federal habeas petitions. *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir. 1999).

## V.    Analysis

### A.    The Claims of Ineffective Assistance of Counsel

#### 1.    The Legal Standard

An ineffective-assistance-of-counsel allegation in a § 2254 motion is analyzed under *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail, the movant must demonstrate that his counsel's performance was both deficient and prejudicial. *Strickland*, 466 U.S. at 687. The movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001).

Counsel's performance is constitutionally deficient if it falls below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In reviewing an ineffectiveness claim, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effects of hindsight." *Id.* at 689. An ineffective-assistance claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of

counsel's conduct[,]" because otherwise "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id.*

The prejudice element requires the movant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* If the movant fails to prove one prong of the *Strickland* test, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one."). "Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim." *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997).

Under AEDPA, this court's task is to assess whether the state court was reasonable in denying Esparza's *Strickland* claims. While "[s]urmounting *Strickland*'s high bar is never an easy task," a habeas petitioner's duty to "[e]stablish[] that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010); *Harrington v. Richter,* 562 U.S. 86, 105 (2011). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." 562 U.S. at 101 (quotation omitted). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,'. . . and when the two apply in tandem, review is 'doubly so.'" *Richter*, 562 U.S. at 105; *see also Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

> **2.**     **The Claim that Trial Counsel Provided Ineffective Assistance by Failing to Call a Favorable Witness**
> **(Ground 2A)**

Esparza alleges that he informed his counsel that when the robbery occurred on November 6, 2004, he was at work.  Esparza alleges that he asked counsel to interview his employer, Glenn Summers, to obtain his time card to verify when he was at work.  Esparza alleges that although the trial court signed an order granting counsel's request for funds to hire an investigator, counsel failed to diligently follow up on this alibi.

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).  To prevail on an ineffective-assistance-of-counsel claim based on an uncalled witness, "the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Id.*  Esparza has given no information about Summers's availability or willingness to testify at trial.  Although Esparza has named Summers as the witness, he has not shown that Summers would have testified or that it would have been favorable to the defense.  Without more, Esparza cannot proceed on his ineffective-assistance-of-counsel claim based on counsel's failure to depose or subpoena Summers.

The prejudice element of the *Strickland* analysis requires Esparza to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  The evidence of Esparza's guilt was overwhelming.  Zorbas identified Esparza in a video lineup less than 12 hours after the robbery and in a live lineup on March 24, 2005. Zorbas testified that on the evening of November 6, 2004, a man driving a white van pulled behind him in his driveway.  Zorbas testified that during a brief struggle, the man stabbed him at least twice

with a knife.  The man then got into the driver's seat of Zorbas's vehicle.  As Zorbas approached the

vehicle, the man threatened him with a gun.  Zorbas testified that he was in the hospital for three

days from the stabbing injuries.  He identified Esparza as the man who threatened and stabbed him.

At trial, Officer Jafari testified that he apprehended Esparza because he was driving a stolen

vehicle.  Officer Garcia testified that the stolen vehicle belonged to Zorbas and that a knife was

found in the center console of the vehicle.

Esparza has not shown that there was a reasonable probability that, but for counsel's failure

to call Glenn Summers, the result of the proceeding would have been different.  This claim is

dismissed.

### 3.     The Claim that Trial Counsel Provided Ineffective Assistance by Failing to Request a Jury Instruction (Ground 2B)

Esparza argues that counsel was deficient in failing to request a jury instruction under article

38.23(a) of the Texas Code of Criminal Procedure.  Article 38.23(a) provides that "[n]o evidence

obtained by an officer . . . in violation of any provisions of the Constitution or laws of the State of

Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence

against the accused" at trial. TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005).  "When

evidence presented before the jury raises a question of whether the fruits of a police-initiated search

or arrest were illegally obtained, 'the jury shall be instructed that if it believes, or has a reasonable

doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such

event, the jury shall disregard any such evidence so obtained.'" *Robinson v. State,* 377 S.W.3d 712,

719 (Tex. Crim. App. 2012) (quoting TEX. CODE CRIM. PROC. ANN. art. 38.23(a)).

A defendant's right to the submission of an instruction under article 38.23(a) "is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible." *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007). To be entitled to a jury instruction under article 38.23(a), the defendant must meet three requirements: "(1) [t]he evidence heard by the jury must raise an issue of fact; (2) [t]he evidence on that fact must be affirmatively contested; and (3) [t]hat contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence." *Id.* at 510. There must be a genuine dispute about a material issue of historical fact before an article 38.23 instruction is warranted. *Id.* If there is no disputed issue of fact, the legality of the challenged conduct is determined by the trial court alone as a matter of law. *Id.*

Esparza alleges that on November 7, 2004, Officer David Garcia of the Houston Police Department went to Ben Taub Hospital to show Zorbas a video lineup of potential suspects. Zorbas was unable to sit upright due to his neck brace and back injury, and was groggy from taking Benadryl the night before. Zorbas tentatively identified Esparza from his hospital bed when a police officer put the picture on a 13-inch television screen. Detective Sherrouse of the Houston Police Department robbery division conducted a live lineup on March 24, 2005. Esparza alleges that he was the only person present in both the November 7, 2004 mock lineup and the March 24, 2005 live lineup. Esparza argues that the questionable procedures used in the mock lineup and the subsequent live lineup were before the jury. Esparza notes that the jury asked to view the videotape lineups, which Esparza takes as indicating that they considered the lineups impermissibly suggestive.

If undisputed facts are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not material to the ultimate admissibility of the evidence and need not be

submitted to the jury. *Id.* The factual dispute must be necessary to determining the lawfulness of

the challenged conduct. *Id.* at 511. If the defendant successfully raises a factual dispute material to

whether evidence was illegally obtained, an article 38.23(a) instruction is mandatory and must be

included in the jury charge. *Robinson,* 377 S.W.3d at 719.

Esparza asserts that an article 38.23 jury instruction would have resulted in the jury resolving

conflicting testimony as to whether Zorbas's identification of Esparza was impermissibly tainted.

But the Court of Criminal Appeals has held that article 38.23, by its terms, applies only to illegally

obtained evidence, not to in-court identifications. *Allen v. State,* 511 S.W.2d 53, 54 (Tex. Crim. App.

1974); *see Andujo v. State,* 755 S.W.2d 138, 143 (Tex. Crim. App. 1988) (en banc). Esparza has not

shown that he was entitled to an article 38.23 instruction. *See Hardin v. State,* 951 S.W.2d 208, 211

(Tex. App. - Houston [14th Dist.] 1997, no pet.) (rejecting claim for ineffective assistance where trial

counsel failed to request article 38.23 instruction when evidence established that he was not entitled

to instruction and therefore it did not affect outcome of case). Counsel's failure to request an

instruction to which Esparza was not entitled is not ineffective assistance. *See id.*

The record also shows that defense counsel moved to suppress the in-court and out-of-court

identifications. At the conclusion of the motion to suppress hearing, the court stated:

> THE COURT: All right. The Court, in reviewing the case law
> submitted by counsel, the factors annunciated in the Supreme Court
> case, *Neal vs. Biggars*, finds that while the defendant's photographic
> image in a video lineup and his subsequent appearance in a live
> lineup in which he was the only person in each -- or both, rather, may
> be suggestive, the Court, in looking at the totality of the
> circumstances, finds, first off[sic] all, that there was an articulable or
> arguable need for a second identification given the fact of the medical
> situation of the complainant. But beyond that, the Court finds that if
> suggestive, based on the totality of the circumstances, it does not give
> rise to a substantial likelihood of irreparable misidentification; and

the Motion to Suppress the in-court and out-of-court identifications
are denied.

(Docket Entry No. 10-10, pp. 16-17).

Defense counsel could reasonably have concluded that requesting a jury instruction under article 38.23 would have been futile, given the court's previous denial of the motion to suppress. A decision to forgo asking for a specific jury charge is strategic in nature. Strategic choices made after reasonable investigation are seldom found deficient. *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

Esparza did not show that defense counsel's trial strategy was unreasonable. The state habeas court rejected Esparza's claims of ineffective assistance and found that he failed to meet his burden under *Strickland*. Esparza fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland*, or was an unreasonable determination of the facts based on the evidence in the record. Esparza is not entitled to federal habeas corpus relief on this claim, and it is dismissed.

### 4.    The Claim of Ineffective Assistance of Appellate Counsel (Ground 3B)

To prevail on his claim of ineffective assistance of appellate counsel, Esparza must show that the failure to raise certain issues or arguments on appeal was below the "wide range of professionally competent assistance" and caused prejudice. Showing ineffective assistance of appellate counsel based on a failure to raise certain issues on appeal is difficult. A federal habeas court defers to the state courts' determination of whether counsel's choice of issues was a strategic determination that is not to be second-guessed. *Smith*, 477 U.S. at 536 (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)) (internal quotations omitted) ("winnowing out weaker arguments on appeal and focusing on

those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."); *see also Robbins*, 528 U.S. at 288 ("it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent"); *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989) ("[t]he Constitution does not require appellate counsel to raise every non–frivolous ground that might be pressed upon appeal").  And to show prejudice, Esparza must demonstrate a reasonable probability that had appellate counsel raised the issue or argument, it would have altered the outcome of the appeal. *Robbins*, 528 U.S. at 285–86.

Esparza claims that appellate counsel's failure to raise substantial and favorable arguments on appeal, including  the trial court's denial of the motion to suppress evidence, denied him an opportunity to have the Court of Appeals decide whether that ruling was an abuse of discretion.

At trial, Esparza moved to suppress Zorbas's identification.  He argued that the photographic evidence the Houston Police Department used was tainted and led to misidentification.  Zorbas was hospitalized at the time and was 95% certain of the identification from the photographic line-up. Esparza argues that the nature of Zorbas's injuries and the pain medicine he was taking interfered with his ability to make an accurate identification. Esparza argues that the trial court violated his right to due process by failing to exclude the out-of-court identifications.

An identification procedure violates due process when it is "'unnecessarily suggestive and conducive to irreparable mistaken identification.'" *United States v. Atkins*, 698 F.2d 711, 713 (5th Cir. 1983) (quoting *Stovall v. Denno*, 388 U.S. 293, 302 (1967)).  A conviction based on an eyewitness identification at trial following a pretrial photographic identification may be set aside "if the photographic identification procedure was so impermissibly suggestive as to give rise to a very

substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968).

A two-step process governs the admissibility of identification evidence. The first step is to determine whether the pretrial identification was impermissibly suggestive. If so, the court determines whether, "under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification." *Herrera v. Collins*, 904 F.2d 944, 946 (5th Cir. 1990) (citing *Simmons v. United States*, 390 U.S. 377 (1968)).

"The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses certain aspects of reliability." *See Biggers,* 409 U.S. at 193. Courts look to the "totality of the circumstances" to determine whether an identification carries a substantial risk of misidentification. *Manson v. Brathwaite,* 432 U.S. 98, 113 (1977) (citing *Stovall,* 388 U.S. at 302); *Biggers,* 409 U.S. at 196. Courts use five factors to evaluate reliability if the procedure used was suggestive:

> (1) the opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

*Biggers,* 409 U.S. at 199-200. "[R]eliability is the linchpin in determining the admissibility of identification testimony." *Manson,* 432 U.S. at 114.

A review of the five *Biggers* factors supports the conclusion that the identification was reliable. The trial testimony shows that the complainant, Zorbas, had ample opportunity to see Esparza at the time of the offense. They were in a well-lit driveway and struggled for several seconds. Zorbas was able to see the assailant's face at close range. The second factor, the witness's

degree of attention, also supports finding a reliable identification. Zorbas paid close attention to the assailant, especially when the knife was at his throat. The record discloses no factor that would have distracted Zorbas's attention, and Esparza does not point to any.

The third factor, the accuracy of the witness's prior description of the assailant, provides more support for finding a reliable identification. On cross-examination, Zorbas testified that he did not recall the specific description he gave the police about the assailant. He recalled telling the officers that there were at least three men in the white van that pulled up behind his vehicle, and that his assailant was Hispanic and in his late twenties or thirties. Esparza is a Hispanic male who was 31 when the case was tried.

The fourth factor, the level of certainty the witness demonstrates, also supports the reliability of the identification. Although Zorbas's neck was in a brace from his injuries and he had taken Benadryl the night before, he had not taken any medication the morning of the identification procedure. He was aware of his surroundings and of what the police asked him. None of the officers suggested which individual he should select from the line-up. Zorbas identified Esparza as the assailant with 90% to 95% certainty. The police told him to be certain about his identification. During the live lineup held several months later, Zorbas again identified Esparza, this time with 100% certainty.

The fifth factor is to consider the length of time between the crime and the confrontation. The robbery occurred on November 6, 2004. Police showed Zorbas the video lineup less than 24 hours later, and took him to a live lineup on March 24, 2005.

None of these factors supports Esparza's arguments. Considering these factors and Fifth Circuit precedent, even if the identification may have been impermissibly suggestive, it posed no

substantial risk of misidentification.  Esparza's counsel was able to cross-examine Zorbas about his in-court identification, which gave the jury ample opportunity to evaluate his credibility and  the identification in determining whether the evidence proved Esparza's guilt.

The lack of evidence showing that the identification of Esparza was unduly suggestive, combined with the double deference due the state court findings, precludes federal habeas relief on the ineffective-assistance claim based on failing to raise on appeal the trial court's denial of the motion to suppress the out-of-court identification.  There is no basis to overcome the state-court finding that Esparza's appellate counsel was not deficient in failing to raise the denial.

Esparza has not shown that the state court's denial of relief was contrary to, or an unreasonable application of, federal case law.  The respondent is entitled to summary judgment on the claims of ineffective assistance of appellate counsel.

## VI.   The Claim of Insufficient Evidence

Esparza bases his argument that the evidence was insufficient to support his conviction for aggravated robbery on evidence that during the out-of-court lineups, Zorbas could not positively identify the person who stabbed him.  Esparza also argues that the knife recovered from Zorbas's stolen vehicle was not identified as the knife used in the stabbing or linked to the stabbing through prints or other forensic evidence.  Esparza argues that no evidence links the knife presented at trial to the robbery.

Evidence is sufficient to support the conviction if it satisfied the "substantive elements of the criminal offense as defined by state law." *Brown v. Collins,* 937 F.2d 175, 181 (5th Cir. 1991) (quoting *Jackson,* 443 U.S. at 324 n.16).  The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, if a reasonable trier

of fact could have found that the evidence, and all reasonable inferences drawn from it established

guilt beyond a reasonable doubt. *United States v. Salazar,* 958 F.2d 1285, 1294 (5th Cir.), *cert.*

*denied,* 506 U.S. 863 (1992).

A federal court must consider whether, viewing all the evidence "in the light most favorable

to the prosecution, any rational trier of fact could have found the existence of facts necessary to

establish the essential elements of the offense beyond a reasonable doubt." *Jackson v. Virginia,* 443

U.S. 307, 318-19 (1979).   All credibility choices and conflicting inferences are to be resolved in

favor of the fact-finder. *United States v. Cyprian,* 197 F.3d 736, 740 (5th Cir. 1999), *cert. denied,*

531 U.S. 822 (2000).

When the state court has carefully reviewed the constitutional sufficiency of the evidence,

its determination is entitled to substantial weight. *Jackson v. Virginia,* 443 U.S. 307, 332 n.15

(1979).

The indictment charged Esparza as follows:

> The duly organized Grand Jury of Harris County, Texas, presents in
> the District Court of Harris County, Texas, that in Harris County,
> Texas, IVAN XAVIER ESPARZA, hereafter styled the Defendant,
> heretofore on or about NOVEMBER 6, 2004, did then and there
> unlawfully, while in the course of committing theft of property owned
> by JESSE ZORBAS and with intent to obtain and maintain control of
> the property, intentionally and knowingly threaten and place JESSE
> ZORBAS in fear of imminent bodily injury and death, and the
> Defendant did then and there use and exhibit a deadly weapon, to-wit:
> A KNIFE.
> AGAINST THE PEACE AND DIGNITY OF THE STATE.

(Docket Entry No. 10-25, p. 88).

"When one reasoned state court decision rejects a federal claim, subsequent unexplained

orders upholding that judgment or rejecting the same claim are considered to rest on the same ground

as did the reasoned state judgment." *Bledsue v. Johnson,* 188 F.3d 250, 256 (5th Cir. 1999).  This

"look through" doctrine enables a federal habeas court "to ignore—and hence, look through—an

unexplained state court denial and evaluate the last reasoned state court decision." *Id.; see also Renz

v. Scott,* 28 F.3d 431, 432 (5th Cir. 1994) (finding that the denial of relief "on the findings of the trial

court" by the Texas Court of Criminal Appeals adopts an express finding by the trial court that a

claim was procedurally barred from habeas review); *Ylst v. Nunnemaker,* 501 U.S. 797, 803 (1991)

("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained

orders upholding that judgment or rejecting the same claim rest upon the same ground.").

The First Court of Appeals rejected Esparza's challenge to the sufficiency of the evidence.

Because the First Court of Appeals issued the last reasoned opinion on this matter, this court "looks

through" the Texas Court of Criminal Appeals order to the appellate-court decision.

The First Court of Appeals found:

> SUFFICIENCY OF THE EVIDENCE
> . . . .
>
> Aggravated Robbery
>
> A person commits the offense of aggravated robbery if, in the course
> of committing theft he (1) intentionally or knowingly, or recklessly
> causes bodily injury to another or (2) intentionally or knowingly
> threatens or places another in fear of imminent bodily injury or death,
> and (3) causes serious bodily injury to another or (4) uses or exhibits
> a deadly weapon. *See* TEX. PEN. CODE ANN. §§ 29.02(a)(1),(2),
> 29.03(a)(1), (2) (Vernon 2003).
>
> Legal sufficiency
>
> Here, the evidence, viewed in the light most favorable to the verdict,
> established the elements of the offense of aggravated robbery. Jesse
> testified that he struggled with appellant, and that appellant stabbed
> him at least twice with a knife, causing wounds requiring three days

of hospitalization. *See Miller v. State,* 177 S.W.3d 1, 4 (Tex. App. - Houston [1st Dist.] 2004, *no pet.*) ("Although a knife is not a deadly weapon per se, a knife can be found to be a deadly weapon based on the nature of its use or intended use."). Jesse also testified that he could see appellant clearly because there was still some natural light as well as two motion sensor lights and a street light that allowed him to see appellant, and that following the struggle, appellant took his vehicle. A conviction may be based on the testimony of a single eyewitness. *Aguilar v. State,* 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); *Davis v. State,* 177 S.W.3d 355, 359 (Tex. App. - Houston [1st Dist.] 2005, *no pet.*). Additionally, appellant was apprehended driving Jesse's vehicle several hours after the robbery, and a knife was found in the center console of the vehicle. The unexplained possession of property recently stolen in a robbery permits an inference that the defendant is the one who committed the robbery. *See Poncio v. State,* 185 S.W.3d 904, 905 (Tex. Crim. App. 2006). We hold that a rational jury could have concluded from this evidence that appellant committed the offense of aggravated robbery. As such, the evidence is legally sufficient. We overrule point of error one.

Factual sufficiency

In support of his factual-insufficiency claim, appellant argues that there was insufficient evidence to show that appellant committed this aggravated robbery. Appellant points out that the only evidence connecting him to the robbery was Jesse's testimony and the fact that he was driving Jesse's stolen vehicle.[FN2] Appellant emphasizes that Jesse's identification was several months after the robbery and that the other witness, Jesse's younger brother, Max, was unable to identify appellant. Appellant also contends that because there were three other passengers in the stolen vehicle when appellant was apprehended, he was not in exclusive possession of the vehicle.

> FN2. Appellant argues that evidence in the punishment phase of the trial of a crime previously committed by appellant indicates that appellant's *modus operandi* was more like purse-snatcher. Because this evidence was not before the jury during the guilt/innocence phase this evidence is not relevant and will not be addressed.

Again, it is well established that a conviction may be based on the testimony of a single witness. *See Aguilar,* 468 S.W.2d at 77; *Davis,* 177 S.W.3d at 359. As discussed above, Jesse testified that he could

clearly see appellant's face, that appellant stabbed him at least two times, and that appellant took his vehicle. Such testimony alone could be sufficient evidence that appellant robbed Jesse. *See Davis,* 177 S.W.3d at 359. Jesse also testified at trial that he was "absolutely positive" that appellant was the man who attacked him.

Appellant points out that Max was unable to identify appellant in a lineup, but Max admitted that he did not get a good look at appellant's face and that he did not see much of what happened. Jesse on the other hand, testified that he clearly saw appellant's face when he exited the van, during their struggle, and when appellant was leaving with the stolen vehicle. The jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the witnesses' testimony. *Jaggers v. State,* 125 S.W.3d 661, 672 (Tex. App. - Houston [1st Dist.] 2003, *pet. ref'd*). As such, Max's testimony that he could not identify appellant does not render Jesse's testimony against the great weight and preponderance of the evidence. In addition to the testimony of Max and Jesse, the State presented evidence that appellant was apprehended only a few hours after the robbery while driving the stolen vehicle. Again, the unexplained possession of property recently stolen in a robbery permits an inference that the defendant is the one who committed the robbery. *See Poncio,* 185 S.W.3d at 905. Appellant presented no evidence explaining his possession of the stolen vehicle. In addition, a knife was found in the center console of the stolen vehicle. Also, appellant relies on the fact that there were other individuals riding in the stolen vehicle at the time appellant was apprehended. Though this evidence may weigh in appellant's favor, it does not make the remaining evidence so weak so as to undermine the jury's determination.

The State's evidence is not so weak that the verdict is clearly wrong and manifestly unjust. Similarly, after viewing all the evidence, we hold that the verdict is not against the great weight and preponderance of the evidence. Accordingly, we further hold that the evidence was factually sufficient. We overrule point of error two.

*Esparza v. State*, 01-06-00866-CR, 2007 WL 3293716, at **2-3 (Tex. App.—Houston [1st Dist.]

2007, *pet. dism'd*) (not designated for publication).

A rational trier of fact could have found, beyond a reasonable doubt, that Esparza committed

the offense of aggravated robbery. The jury heard Zorbas testify that Esparza pulled his van into the

driveway as Zorbas was returning. Zorbas thought family friends were in the van, but became

suspicious and ran back to his vehicle to tell his little brother to run into the house. The driver's side door of Zorbas's vehicle remained open. When Esparza tried to prevent Zorbas from closing the door, they struggled, and Esparza stabbed Zorbas in the neck and arm. A third person approached the passenger side of the vehicle and stabbed Zorbas in the back. Zorbas managed to get away. Esparza drove away in Zorbas's vehicle. Officer Jafari testified that he arrested Esparza the following day, driving Zorbas's vehicle.

The evidence was sufficient to support Esparza's conviction for aggravated robbery. Esparza is not entitled to habeas relief on his insufficient-evidence claim. *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993), *cert. denied*, 510 U.S. 1141 (1994).

## VII.   Conclusion and Order

The respondent's motion for summary judgment, (Docket Entry No. 16), is granted. Final judgment is entered by separate order.

A certificate of appealability is not issued. The showing necessary for a certificate of appealability is a substantial showing of the denial of a constitutional right. *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000) (citing *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000)). An applicant makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further. *See Finley v. Johnson*, 243 F.3d 2150, 218 (5th Cir. 2001). Esparza has not made the necessary showing.

SIGNED on March 1, 2016, at Houston, Texas.

Lee H. Rosenthal
United States District Judge